1
2
3
4         **IN THE UNITED STATES DISTRICT COURT**
5         **FOR THE EASTERN DISTRICT OF CALIFORNIA**
6
7    SHARON BELL,                          CASE NO.  1:04-cv-06217 OWW TAG
8              Plaintiff,                  FINDINGS AND RECOMMENDATIONS
                                           ON PLAINTIFF'S APPEAL FROM
9         vs.                              ADMINISTRATIVE DECISION
10
11   JO ANNE B. BARNHART,
     Commissioner of Social Security,
12            Defendant.
                                    /
13

14         Plaintiff Sharon Bell ("claimant" or "plaintiff") seeks  judicial review of an administrative

15   decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security

16   Income ("SSI") under the Social Security Act ("the Act").  Pending before the Court is claimant's

17   appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

18   Claimant filed her complaint on September, 2004 (Doc. 1), and her opening brief on June 21, 2005.

19   (Doc. 14).  The Commissioner filed her opposition on August 18, 2005 (Doc. 19). Claimant did not

20   file a reply brief.

21         Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the Commissioner consented to

22   proceed before a United States Magistrate Judge.  (Doc. 10).  Claimant declined to consent.  (Doc.

23   5).

24                              **JURISDICTION**

25         On July 9, 1998, claimant filed an application for disability insurance benefits, alleging a

26   December 6, 1996 disability onset date.  (Administrative Record ("AR") 20, 112-14).  Claimant's

27   application was denied initially and on reconsideration and, on November 23, 1999, Administrative

28   Law Judge ("ALJ") Laura Speck Havens found that claimant was not disabled.  (AR 45-53).

                                           1

While claimant's appeal from this adverse decision was pending, she submitted new applications for DIB and SSI benefits on June 20, 2000 with a protective filing date of June 9, 2000. (AR 20, 135, 202, 560).  Acting upon these new applications, the Disability Determination Service found that claimant was disabled.  (AR 20).  However, the Appeals Council vacated this favorable determination, consolidated it with the appeal already before it, and remanded the case to an ALJ for additional evidence and further proceedings.  (AR 90).  On remand, ALJ Havens again found that claimant was not disabled.  (AR 20-35).  Claimant appealed this decision once more and, on July 8, 2004, the Appeals Council denied review.  (AR 8-10).

On September 8, 2004, 62 days after the Appeals Council denied review, claimant filed an appeal with the district court pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  This 62 day filing period facially violates section 405(g), which states that judicial review is predicated on the filing of a civil action "within sixty days after the mailing" of notice of decision.  However, the "60-day requirement is not jurisdictional, but rather constitutes a period of limitations."  Bowen v. City of New York, 476 U.S. 467, 478 (1986).  Moreover, the Social Security Administration has extended the filing time by regulation to allow a filing within 60 days after the date a claimant *receives* notice of the Appeals Council's final action.  20 C.F.R. §§ 404.981.  Such notice is presumed to have been received within five days after the date on the notice, 20 C.F.R. § 422.210(c), in which case a claimant has 65 days to file an appeal.  Here, claimant timely filed her appeal on the 62nd day after the Appeals Council's decision.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on September 24, 1949, making her 53 years old at the time of ALJ Havens's decision.  (AR 35, 623).  At the most recent administrative hearing on April 1, 2003, claimant testified that she had obtained a GED.  (AR 623-24).  Claimant testified that her disability onset date was December 6, 1996, and that she had last worked for two weeks in 1997 as an office helper.  (AR 624).  Prior to that, claimant had been in plant maintenance from 1990 to 1996; had been a will-call manager at a plant nursery from 1989 to 1990; had been a lawn and garden

2

1 supervisor from 1988 to 1989; and had been an office manager assistant from 1987 to 1988.  (AR

2 624-25).

3        As to her impairments, claimant testified that she suffers from pain in her knees, hips and

4 back, that she has severe arthritis at the base of her right foot, and that she also suffers from

5 depression and has difficulty sleeping.  (AR 624, 628-29, 632).  According to claimant, the only

6 physician she sees, Rebecca Webber, M.D., is primarily for weight loss and for prescriptions.  (AR

7 629).  These prescriptions are Elavil, Mobic, Lotrel, Bacloven (a muscle relaxant for twice-weekly

8 leg spasms), Prevacid, Prempro, Allegra, Flonase (for allergies) and Amitriptyline (for pain as

9 needed).  (AR 630, 633).  With these impairments, claimant testified that she can walk for about five

10 to ten minutes, can sit for an hour, but not comfortably, and can lift ten pounds of groceries.  (AR

11 631).

12        As to her daily life and activities, claimant testified that she lives alone, dresses and bathes

13 without assistance, does most household chores, cooks, washes dishes, mops and vacuums, does

14 laundry and occasional yard work in a small front yard.  (AR 625-26).  She can drive a car for forty-

15 five minutes, watches television four hours a day, listens to the stereo and reads about an hour a day.

16 (AR 626, 628).  For exercise, claimant testified that she does aerobics about twice a week and also

17 works out on a weight machine.  (AR 626-27).

18                          **SEQUENTIAL EVALUATION PROCESS**

19        The Social Security Act defines "disability" as the "inability to engage in any substantial

20 gainful activity by reason of any medically determinable physical or mental impairment which can be

21 expected to result in death or which has lasted or can be expected to last for a continuous period of

22 not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

23 that a claimant shall be determined to be under a disability only if her impairments are of such

24 severity that claimant is not only unable to do her previous work but cannot, considering claimant's

25 age, education and work experiences, engage in any other substantial gainful work which exists in

26 the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

27        The Commissioner has established a five-step sequential evaluation process for determining

28 whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if she is

1    engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(b),

2    416.920(b).  If she is not, the decision maker proceeds to step two, which determines whether

3    claimant has a medically severe impairment or combination of impairments.  20 C.F.R.

4    §§ 404.1520(c), 416.920(c).

5         If claimant does not have a severe impairment or combination of impairments, the disability

6    claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

7    compares claimant's impairment with a number of listed impairments acknowledged by the

8    Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

9    416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed

10   impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one

11   conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

12   whether the impairment prevents claimant from performing work she has performed in the past.  If

13   claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e),

14   416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines

15   whether she is able to perform other work in the national economy in view of her age, education and

16   work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See Bowen v. Yuckert, 482 U.S. 137

17   (1987).

18        The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

19   to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five

20   step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the

21   claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to

22   assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

23   shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics

24   in original).  The initial burden is met once a claimant establishes that a physical or mental

25   impairment prevents her from engaging in her previous occupation.  The burden then shifts to the

26   Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2)

27   that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail

28   v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  See, 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

///

**ALJ'S FINDINGS**

**Step One**

The ALJ found at step one that claimant had not engaged in any substantial gainful activity since the alleged onset of her disability.  (AR 24, 33).  As noted above, the alleged disability onset date was December 6, 1996.  (AR 624).

**Step Two**

At step two, the ALJ found that claimant suffered from osteoarthritis, which she concluded was a "severe" impairment.  (AR 24, 33).

**Step Three**

At step three, the ALJ assessed whether claimant's impairments, while severe, were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  The ALJ  concluded that claimant's impairments did not meet or equal one listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (AR 24-25).

**Step Four**

While a vocational expert testified that claimant was able to perform her past relevant work as an Assistant Office Manager (AR 32), the ALJ gave claimant the benefit of the doubt, found that she could not perform such work, and proceeded to step five of the sequential analysis.  (AR 32, 34).

**Step Five**

The ALJ determined that claimant had the residual functional capacity to "carry up to 50 pounds occasionally and 25 pounds frequently; stand and walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday."  (AR 33).  The ALJ also noted postural limitations insofar as claimant was "precluded from stooping, kneeling, crouching or crawling."  (AR 33).  With these limitations, the ALJ determined that claimant was able to do a "significant" range of sedentary work (AR 34) and that there were "a significant number of jobs in the national economy that claimant could perform," including receptionist and appointment clerk.  (AR 34).  Based upon these findings, the ALJ determined that claimant was not disabled.  (AR 34).

///

6

1                                          **ISSUES**

2         Claimant's Opening Brief raised the following issues for consideration:

3         A.  Whether the ALJ's findings are supported by substantial evidence.

4         B.  Whether the vocational expert's testimony was deficient.

5         C.  Whether the ALJ complied with the Appeals Council's order to use a medical expert.

6         D.  Whether the ALJ properly developed and evaluated the mental health record.

7         E.  Whether the ALJ properly considered claimant's credibility.

8         This Court must uphold the Commissioner's determination that claimant is not disabled if the

9  Commissioner applied the proper legal standards and there is substantial evidence in the record as a

10 whole to support the decision.

11                                      **DISCUSSION**

12 **I.      The Propriety of the ALJ's Findings**

13        Claimant asserts various errors in the ALJ's review of the records and findings.  These

14 include the following:

15        **a.          Opinion of Gregory Caronis, M.D.**

16        Claimant contends that the ALJ "ignores the opinion of specialist Caronis" and that she

17 "must explain why the opinion is ignored or rejected."  (Doc. 14 at p. 3).

18        The courts distinguish among the opinions of three types of physicians:  treating physicians,

19 physicians who examine but do not treat the claimant ("examining physicians") and those who

20 neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821,

21 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his or her

22 familiarity with a claimant's physical condition.  Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir.

23 1989).  In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and

24 convincing" reasons.  Fair, 885 F.2d at 604-605.  However, when contradicted by another doctor, the

25 ALJ may reject a treating physician's opinion upon giving "'specific and legitimate reasons'

26 supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722

27 F.2d 499, 502 (9th Cir. 1983)).  The same test applies to examining physicians:  The ALJ must give

28 clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate

                                            7

1   reasons supported by substantial evidence in the record" for rejecting those opinions that have been

2   contradicted.  Lester, 81 F.3d at 830-31.  Finally, as to the nature of the reasons deemed sufficient (to

3   set aside a treating or examining physician's opinion), courts within the Ninth Circuit have

4   recognized conflicting medical evidence, the absence of regular medical treatment during the alleged

5   period of disability, and the lack of medical support for doctors' reports that are based substantially

6   on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a

7   treating or examining physician's opinion.  Flaten v. Secretary of Health & Human Svcs., 44 F.3d at

8   1453, 1463-64; Fair, 885 F.2d at 604.

9        In the instant case, and consistent with these authorities, ALJ Havens considered and properly

10  accounted for the degree to which she adopted (in part) and rejected (in part) Dr. Caronis's

11  consultative report.  Specifically, as is required when discounting consultative opinions of examining

12  physicians, the ALJ gave "specific and legitimate reasons that are supported by substantial evidence

13  in the record."  Lester, 81 F.3d at 830-31.  As the ALJ wrote:

14          "In a Consultative Examining Orthopedic physician's report that was
            completed by Gregory Caronis, M.D. on July 17, 1999, the claimant
15          was noted to retain a normal range of motion in her cervical spine,
            lumbar spine, upper extremities, and lower extremities, except in her
16          right knee, which showed a specifically reduced range of motion of 0-
            150 degrees, and genu valgus (Ex. 13F, pp. 1-5).  Additionally, Dr.
17          Caronis noted that the claimant retained intact motor strength, normal
            muscle tone, intact reflexes, and intact sensory capacity throughout her
18          upper and lower extremities; he noted that she was negative upon
            straight leg raise testing, bilaterally; and he noted that she retained
19          'excellent' grip strength bilaterally.  Ultimately, Dr. Caronis assessed
            the claimant with having the capacity for lifting 10 pounds
20          occasionally; standing and walking for up to 1 hour at a time; and
            sitting for up to 6 hours in an 8-hour workday, with a preclusion from
21          bending or kneeling.  The undersigned finds that Dr. Caronis' findings,
            with regard to claimant's capacity for sitting and with regard to the
22          claimant's preclusion from kneeling are well supported by his findings
            and are consistent with the rest of the evidence within the files;
23          therefore, those findings are adopted herein.  However, the
            undersigned finds that the rest of Dr. Caronis' findings, with regard to
24          lifting and carrying and standing and walking are overly restrictive,
            given his own findings, that the claimant retains a full range of motion
25          throughout her cervical spine, lumbar spine, and upper and lower
            extremities (with the exception of the right knee, which is slightly
26          reduced); that the claimant retains intact motor strength, reflexes, and
            sensation throughout her upper and lower extremities."

27
    (AR 28)(emphasis added).
28

                                                8

1    As noted above, ALJ Havens found and reported a specific, logical inconsistency:  Dr.

2  Caronis's examination findings that claimant was unimpaired vis-a-vis her range of motion

3  (throughout various areas of her body), and that she retained intact motor strength, reflexes and

4  sensations simply did not comport with his inexplicably more limited conclusion as to claimant's

5  lifting, carrying, standing and walking capacities.  (AR 28).[1]  The undersigned therefore concludes

6  that ALJ Havens properly limited the opinions of Dr. Caronis as to claimant's lifting and carrying

7  capacity, that her decision was supported by substantial evidence in the record and that it was a

8  careful and considered synthesis of the reports and opinions of all of the reporting physicians

9  reflected in the medical record.

10         **b.    Opinion of Kenneth R. Koskella, M.D.**

11    Claimant contends that "Dr. Kaskella's opinion is rejected without proper explanation."

12  (Doc. 14 at pp. 3-4).

13    Once again, the Court finds, contrary to claimant's statement, that ALJ Havens considered

14  and properly accounted for the degree to which she adopted (in part) and rejected (in part) the

15  examination of Kenneth R. Koskella, M.D., again with "specific and legitimate reasons that are

16  supported by substantial evidence in the record."  <u>Lester</u>, 81 F.3d at 830-31.  As the ALJ wrote:

17         "In a Qualified Medical-Legal Evaluation that was completed by
           Kenneth R. Koskella, M.D. in connection with the claimant's worker's
18         compensation claim on February 23, 1998, Dr. Koskella noted that
           recent x-rays were 'essentially negative, except for the genu valgum
19         deformity and small osteophytes at the superior and inferior poles of
           the patella and lateral edge of the femur and tibia' bilaterally
20         (consistent with osteoarthritis)(Ex. 3F, pp. 1-17).  He also noted that a
           rheumatoid blood panel returned with negative results.  Furthermore,
21         upon testing, Dr. Koskella noted that while the claimant exhibited
           some tenderness and pain in her knees, bilaterally, overall, she showed
22         a good range of motion in both knees.  He also noted that both knees
           were generally stable.  Additionally, he noted that the claimant retained
23         full motor strength, reflexes, and sensation throughout both her upper

24  _____

25    [1]  The ALJ listed another reason for rejecting, in part, Dr. Caronis's opinion.  As the ALJ wrote: "Additionally,
       the undersigned noted that Dr. Caronis' findings, with regard to the claimant's lifting and carrying and standing and
26     walking capacity are inconsistent with the rest of the evidence within the files."  (AR 28).  While this statement standing
       alone was insufficiently "specific," the "rest of the evidence" referred to by the ALJ was reported in her written
27     determination and included the contradictory (vis-a-vis Dr. Caronis) opinions of orthopedic physicians Michael Y. Han,
       M.D. (AR 29) and Oakshmi Neena Madireddi, M.D. (AR 28-29), as well as claimant's own treating physician, Edward
28     L. Cahill, M.D. (AR 27, 534). .

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14

and lower extremities bilaterally and that she tested negative upon straight leg raise testing.  Based upon his thorough review of the claimant's treatment records and his very thorough physical examination of the claimant, Dr. Koskella diagnosed the claimant with being status-post medial and lateral meniscus tears in the right knee with subsequent arthroscopy; having osteoarthritis in both knees, right greater than left; and having 'mild' chronic lower back pain syndrome. Ultimately, Dr. Koskella assessed the claimant with having limitations which preclude her from kneeling, crawling, heavy lifting, or standing for more than 1 hour.  The undersigned carefully took Dr. Koskella's findings into consideration in determining the claimant's physical residual functional capacity herein.  Therefore, the claimant is limited to lifting and carrying a maximum of 50 pounds occasionally and 25 pounds frequently (which corresponds to a medium exertional level of lifting and carrying, rather than a 'heavy' exertional level, which is precluded by Dr. Koskella's assessment) and the undersigned finds that she should be precluded from kneeling and crawling.  While the undersigned took Dr. Koskella's recommendation with regard to the claimant's standing limitations into consideration in determining the claimant's physical residual functional capacity, I find that this finding by Dr. Koskella is overly restrictive, given his own objective findings, that the claimant experiences only 'mild' chronic lower back pain; retains full motor strength, intact reflexes, and intact sensation throughout her lower extremities; and a 'good' range of motion in her knees; therefore, the undersigned finds that a finding that the claimant can stand and walk for up to 2 hours in an 8-hour workday (a slightly less restrictive findings) is justified."

15   (AR 26).

16        As noted above, ALJ Havens accepted Dr. Koskella's findings vis-a-vis claimant's kneeling,

17   crawling and lifting limitations, but found only his standing limitation (one hour) to be slightly too

18   restrictive.  The ALJ then stated specific, legitimate reasons for slightly discounting Dr. Koskella's

19   findings.  Elsewhere in her written determination, the ALJ synopsized a series of other medical

20   opinions that were consistent with this slightly less restrictive finding.  These include the opinions of

21   Dr. Madireddi (AR 28-29)(opining that claimant could stand and walk for six hours) and Dr. Han

22   (AR 29)(opining that claimant could stand and walk for 2-4 hours), as well as the assessment of

23   claimant's treating physicians, Dr. Cahill (AR 27)(opining that claimant could walk for up to 3 hours

24   in an 8-hour workday).  The undersigned therefore concludes that ALJ Havens properly limited the

25   opinion of Dr. Koskella with respect to the limitations he found, e.g., claimant's standing limitation

26   and that her decision was supported by substantial evidence in the record.

27   ///

28   ///

10

1  **c.      Sufficiency of the ALJ's Consideration of Lumbar Disc Disease**

2        Claimant asserts that she suffers from "severe degenerative lumbar disc disease," an

3  impairment which she alleges was not appropriately considered by the ALJ.  (Doc. 14 at p. 4).

4        The Court finds that this assertion is unfounded.  ALJ Havens parsed and reported upon

5  claimant's medical records in considerable detail.  (AR 26-31).  As to claimant's alleged spinal

6  impairments, the ALJ noted multiple orthopedic opinions to the effect that such impairment had no

7  exertional impact whatsoever.  (AR 28-29)(reporting findings of Gregory Caronis, M.D., Lakshmi

8  Neena Madireddi, M.D. and Michael Y. Han, M.D.).  Indeed, the various orthopedic physicians who

9  examined claimant repeatedly reported that she retained a  "full range of motion" in her cervical and

10  lumbar spine.  (Id.).  The undersigned therefore finds that the ALJ appropriately considered

11  claimant's alleged lumbar impairment and that her determination not to deem it "severe"- or to deem

12  it equivalent to a Listed impairment when combined with other of claimant's complaints - was well

13  supported by substantial evidence in the record. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir.

14  2005)("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's

15  complaints may appear to be, the existence of a medically determinable physical or mental

16  impairment cannot be established in the absence of objective medical abnormalities; i.e., medical

17  signs and laboratory findings"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)("[s]ince we

18  find that there was substantial evidence to support the ALJ's finding that [claimant's] impairments

19  were not severe, we do not reach the question of whether those impairments equaled a listed

20  impairment either").

21  **d.      Sufficiency of Consideration of a Closed Period of Disability**

22        In a single sentence argument, claimant states that "[d]espite the surgery in 1977, there was

23  no consideration of a closed period of disability."  (Doc. 14 at p. 4).

24        The undersigned finds no error in this regard and that the law with respect to closed end

25  periods of disability is clear.  Unless an impairment is expected to result in death, it must have lasted

26  or be expected to last for a continuous period of at least *twelve months* in order to be considered

27  disabling.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509.  See Flaten v. Secretary of Health and

28  Human Services, 44 F.3d 1453, 1459 (9th Cir. 1995).

1    In the instant case, claimant had suffered a work-related knee injury on August 18, 1995, and

2    underwent arthroscopic surgery on the knee on March 25, 1997.  (AR 25).  Subsequently, Milton

3    David, M.D. reported - in connection with claimant's worker's compensation claim - that the results

4    of the surgery were excellent and that claimant should have been capable of returning to work within

5    two to three months after the surgery.  (AR 25-26).  In addition, claimant's own treating physician,

6    Edward L. Cahill, M.D., opined less than a year after claimant's surgery that she could work as a

7    utility person at a plant nursery.  (AR 318).  The Court concludes - given these medical reports - that

8    the evidence of record cannot have supported a closed period of disability and that the ALJ did not

9    err in refusing to find one.

10   **II.   Compliance with Appeals Council Order Regarding Vocational Expert Testimony**

11        Claimant asserts that the ALJ failed to comply with the Appeals Council's order regarding

12        the use of vocational expert testimony.  (Doc. 14 at pp. 3-4).  That order by the Appeals

13        Council was as follows:

14             "Obtain supplemental evidence from a vocational expert to clarify the
               effect of the assessed limitations on the claimant's occupational base
15             (Social Security Ruling 83-14), and to determine whether the claimant
               has acquired any skills that are transferable to other occupations under
16             the guidelines in Social Security Ruling 82-41.  The hypothetical
               questions should reflect the specific capacity/limitations established by
17             the record as a whole.  The Administrative Law Judge will ask the
               vocational expert to identify examples of appropriate jobs and to state
18             the incidence of such jobs in the national economy (20 CFR
               404.1566)."
19
20   (AR 91).

21        The ALJ complied with each of these requirements.  First,  the ALJ asked the vocational

22   expert ("VE") to identify the skill and exertional levels of claimant's prior jobs, an inquiry that

23   developed claimant's occupational base.  (AR 635).[2]  Second, again consistent with the remand order

24   issued by the Appeals Council, the ALJ elicited from the VE whether and to what extent claimant

25   had skills that were transferable to other occupations, and specifically to occupations reflecting

26   _____

27        [2] See Social Security Ruling 83-14 (the residual functional capacity addressed in a rule under the medical-
     vocational guidelines "establishes the presence of an occupational base that is limited to and includes a full range (all or
     substantially all) of the unskilled occupations existing at the exertional level in question").  Here, the VE testified that
28   claimant's prior work largely included jobs at a "medium" exertional level.  (AR 636).

specific capacity/limitations established by the record.  (AR 637)("Do any of these jobs hold any

transferable skills to sedentary work").  In this respect, the ALJ also asked the VE to testify as to the

degree to which claimant's occupational base was eroded by her impairments, e.g.,her two-hour

walking limitation and her kneeling, crouching, crawling and stopping limitations.  (AR 639-40,

655-57).  Finally, in response to questions from both the ALJ and claimant's attorney, the VE gave

examples of appropriate jobs and how many such jobs existed in the national economy, including as

eroded by claimant's various limitations.  (AR 637-58).[3]  In sum, the Court finds that the order of the

Appeals Council with respect to supplemental vocational expert testimony was hewed to without

error by ALJ Havens.

**III.      Compliance with Appeals Council Order regarding Medical Expert**

Claimant asserts that the ALJ ignored the Appeals Council's order to use a medical expert "to

evaluate the case at Steps 3 and 5 of the Sequential Evaluation."  (Doc. 14 at p. 6).

The Appeals Council order, which was dated June 20, 2002, required the ALJ on remand to

do the following:

> "Obtain evidence from a medical expert qualified in orthopedics, if
> available, to clarify the nature and severity of the claimants
> impairments (20 CFR 404.1527(f) and Social Security Ruling 96-6p)."
> (AR 91).

As ordered by the Appeals Council, evidence *was* obtained from a medical expert qualified in

orthopedics, one Michael Y. Han, M.D.  (AR 438-442).  As ALJ Havens's stated:

> "In another Consultative Examining Orthopedic physician's report that
> was completed by Michael Y. Han, M.D. on November 2, 2002 (and
> thus after the Appeals Council issued its Order to obtain a consultative
> examination by a medical expert specializing in orthopedics), Dr. Han
> noted that the claimant continued to retain fully intact range of motion
> in her cervical spine, upper extremities, lumbosacral spine, and lower
> extremities, with the exception of her right knee, which showed a
> continuing, slightly reduced range of motion and valgus laxity (Ex.

---

[3]  Claimant also asserts that the VE was "equivocal" in various contexts, that he lacked "certainty," that his
answers were "insufficient," and that some of his answers were "mumbled," "confused" and "inaudible." (Doc. 14 at pp.
5-6). The Court's inquiry in the VE context ultimately relates to whether there was substantial evidence in the record for
the ALJ's determination that sufficient jobs existed in the national economy for a person with claimant's skills and
residual functional capacity. Jones, 760 F.2d at 995 (court must uphold an ALJ determination that is supported by
substantial evidence).  Given the VE's testimony as a whole, the ALJ's determination that there *were* sufficient jobs
available to a person with claimant's impairments was well founded.

20F, pp. 1-10).  He also noted that the claimant retained fully intact motor strength, reflexes, and sensations throughout her upper and lower extremities, bilaterally; that she retained intact fine finger movements and grip strength bilaterally; and that the claimant was negative upon straight leg raise testing, bilaterally.  Based on his thorough physical examination of the claimant, Dr. Han found that the claimant would have 'no restrictions' with regard to lifting; found that she should be capable of standing and walking for a total of 2-4 hours in an 8-hour workday; and found that she should have no restrictions with regard to sitting.  He also found that the claimant had postural limitations which restrict her capacity for kneeling, crouching, crawling, and squatting.  Since the undersigned finds that Dr. Han's assessments, with regard to the claimant's capacity for standing and walking, sitting, and with regard to the claimant's postural limitations are well supported by his own objective findings, and since they are consistent with the rest of the evidence within the files, I adopt those findings herein.  However, giving the claimant the benefit of doubt with regard to the level of pain that she subjectively alleges in her knees, and taking into consideration her continuing slightly reduced range of motion as well as valgus in her right knee, the undersigned finds that a slightly more restrictive lifting and carrying finding is justified; therefore, the undersigned limits the claimant to lifting and carrying up to 50 pounds occasionally and 25 pounds frequently herein."  (AR 29)(emphasis added).

It is evident from the above recitation by ALJ Havens that the Appeals Council's mandate was followed: A medical expert qualified in orthopedics - Dr. Michael Y Han - did in fact clarify the nature and severity of claimant's impairments.  Consequently, the Court finds that the ALJ did not err.

**IV.   Evaluation of Claimant's Mental Health Record**

Claimant contends - without explanation - that the ALJ did not adequately develop and evaluate her mental health record.  (Doc. 14 at p. 7).  However, the undersigned finds no error in this regard.

When a colorable claim of mental impairment exists, the ALJ must follow a special evaluation process for such impairments as set forth in 20 C.F.R. §§ 404.1520a (DIB) and 416.920a (SSI).  See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000).  In doing so, the ALJ must first evaluate claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable impairment.  If one exists, the ALJ must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment.  20 C.F.R. § 404.1520a(b)(1)(Disability Insurance Benefits)("DIB"); 20 C.F.R. § 416.920a(b)(1)(SSI).

14

Importantly, under the special evaluation technique specifically applicable to mental impairments, the ALJ must rate the degree of functional limitation that is experienced by claimants. 20 C.F.R. § 404.1520a(b)(2)(DIB); 20 C.F.R. § 416.920(a)(b)(2)(SSI).  This *rating* process covers four broad functional limitation areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3)(DIB); 20 C.F.R. § 416.920a(c)(3)(SSI).  For the first three functional areas (daily living, social functioning, concentration), a five-point scale is used: none, mild, moderate, marked, and extreme.  In rating the fourth functional area (episodes of decompensation), a four-point scale is used: none, one or two, three, four or more.  20 C.F.R. 404.1520a(c)4)(DIB); 20 C.F.R. § 416.920a(c)(4)(SSI).

The aforementioned rating process is necessary because, in performing step three of the sequential analysis, the ratings come into play in the ALJ's determination as to whether a severe mental impairment is or is not a "Listed" impairment.  See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(discussing mental impairment ratings as used in the Listings).  Specifically, as set forth in the regulations pertaining to "Evaluation of mental impairments":

> "(d) After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe . . . .
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. . . ."

20 C.F.R. § 416.920a(d)(1)-(2).  Critically, the ALJ must also *document* application of the special evaluation technique applicable to mental impairments.  20 C.F.R. § 404.1520a(e)(DIB); 20 C.F.R. § 416.920a(e)(SSI)("At the administrative law judge hearing . . . we will document application of the technique in the decision"); 20 C.F.R. § 416.920(a)(e)(2)("The decision must include a specific finding as to the degree of limitation in each of the functional areas").  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)(regulations "require[] the ALJ's written decision to make a specific finding as to the degree of limitations in each functional area").

15

1    In the instant case, it is clear that the ALJ followed the applicable regulations, as set forth

2   above, in evaluating, rating and documenting claimant's alleged mental impairments.  The ALJ's

3   written determination includes extensive synopses of psychiatric reports and mental health

4   evaluations completed by Richard Hicks, M.D. (AR 29-30), by a state agency psychiatrist (AR 30),

5   by psychologist Timothy Miller, Ph.D., (AR 30) and by Larry Sutter, M.D. (AR 30-31).  Included

6   among these records was a Psychiatric Review Technique Form ("PRTF") completed by a state

7   agency psychiatrist.  (AR 30, 292).  Consistent with these reports - except that of Dr. Sutter, whose

8   consultative opinion the ALJ rejected for specific, legitimate reasons (AR 31) - the ALJ explicitly

9   rated claimant in each of the four relevant functional areas: no limitations with regard to activities of

10  daily living; "mild" limitations with regard to maintaining social functioning; "mild" limitations with

11  regard to maintaining concentration, persistence or pace; and no episodes of decompensation.  (AR

12  33-34).[4]  Given the foregoing, it is evident that the ALJ did not err, but rather undertook and

13  appropriately completed the administrative assessment applicable to mental impairments.

14  **V.      Rejection of Claimant's Credibility**

15    According to claimant, the ALJ's one paragraph synopsis of her testimony was "insufficient,"

16  and her rationale for discounting claimant's credibility was "minimal" and "perfunctory."  (Doc. 14

17  at p. 7).

18    Under the law applicable to credibility assessments, it is evident that the ALJ did not err,

19  claimant's protestations notwithstanding.  A two step analysis applies at the administrative level

20  when considering a claimant's subjective credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.

21  1996).  First, the claimant must produce objective medical evidence of an impairment and show that

22  the impairment could reasonably be expected to produce some degree of symptom.  Id. at 1281-82.

23  If claimant satisfies this test - and if there is no evidence of malingering - the ALJ can reject the

24  claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and

25

26    [4]   The requirement of appending a Psychiatric Review Technique Form to the ALJ's decision was eliminated by
amendments to the regulations that became effective on September 20, 2000.  Mersman v. Halter, 161 F. Supp. 2d 1078,

27  1086 (N.D. Cal. 2001).  However, the ALJ's written decision still must make specific findings as to the degree of
limitations in each functional area described in 20 C.F.R. § 404.1520a(c) and its SSI equivalent, section 416.920a(c).

28  Mersman, 161 F. Supp. at 1086.  ALJ Havens did precisely that.  (AR 33-34).

16

1  convincing reasons for doing so." Id. at 1281.  Such specificity is crucial so as to enable effective

2  judicial review.  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of

3  specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible

4  for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence");

5  SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to

6  any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

7  for that weight").

8          Here, ALJ Havens set forth a specific, clear and convincing reason for her determination to

9  discount the subject impact of claimant's physical impairments.  Specifically, the ALJ listed

10  claimant's numerous daily and other activities and social interactions, all consistent with an ability to

11  perform and maintain work at a mere sedentary exertional level, and all collectively inconsistent with

12  claimant's subjective opinion to the contrary.  As the ALJ wrote:

13              "Apart from the objective evidence, there are also substantial
              subjective reasons pursuant to the guidelines of SSR 96-7p to conclude
14              that the claimant's symptoms do not preclude the performance of
              substantial gainful activity within claimant's residual functional
15              capacities listed above.  While the claimant is clearly physically
              impaired, the undersigned notes that she testified at the hearing that
16              she continues to be capable of performing many of her own activities
              of daily living, including driving a car, going to family outings, taking
17              care of her own dressing and bathing, performing her own household
              tasks, such as cooking, doing the laundry, washing dishes, dusting,
18              sweeping, mopping, vacuuming, and yard work.  The claimant also
              testified at the hearing that she does aerobics at home and takes an
19              aerobics class, that she lifts weights using machines for exercise, and
              that she reads newspapers.  The undersigned also noted at the hearing
20              that the claimant retained a normal demeanor and spoke coherently.
              Additionally, the undersigned notes that in various forms that she
21              completed or that others completed for her [citations omitted], the
              claimant was noted to be capable of grocery shopping herself, once a
22              week; managing her own bills; engaging in recreational activities, such
              as shooting pool, going swimming, thrift shop shopping, and feeding
23              and grooming her pets.  The undersigned notes that the physical and
              mental capabilities requisite for performing many of these tasks and
24              social interactions replicate those necessary for obtaining and
              maintaining employment.  For all of these reasons, the undersigned
25              finds that the claimant is less than fully credible with regard to the
              impact of her physical impairment on her capacity for performing
26              substantial gainful activity.  (AR 31).

27          In light of the foregoing, the undersigned finds that ALJ Havens sufficiently articulated a

28  legitimate reason for finding claimant to be "less than fully credible with regard to the impact of her

17

physical impairment on her capacity for performing substantial gainful activity" (AR 31) and that this reason was well supported by substantial evidence in the record. Brawner, 839 F.2d at 433 (upon giving "great weight to [the] ALJ's credibility assessment," the court concluded that it was supported by substantial evidence). Accordingly, claimant's assertion vis-a-vis the ALJ's credibility assessment is unfounded.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS to DENY claimant's appeal from the administrative decision of the Commissioner of Social Security.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than thirty (30) days after service of the proposed findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations. Responses to objections shall be filed and served no later than ten (10) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be served on the magistrate judge. The district judge will review the magistrate judge's findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 20, 2006**
**j6eb3d**

**/s/ Theresa A. Goldner**
UNITED STATES MAGISTRATE JUDGE